HYTHA ET AL., APPELLANT, *v.* SCHWENDEMAN, APPELLEE.

[Cite as Hytha v. Schwendeman (1974),
40 Ohio App. 2d 478.]

(No. 73AP-270—Decided March 5, 1974.)

*Messrs. Wolske & Blue,* for appellant.
*Messrs. Sebastian, Durst, Marsh & Redmond,* for appellee.

HOLMES, J. This appeal presents a rather unusual stance of the parties involved, in that plaintiff Adesta Loretta Hytha, hereafter referred to as appellant, who had won a jury verdict in the Common Pleas Court of Franklin County, appeals to this court on the basis that the jury's verdict was grossly inadequate, which, as stated by the appellant, indicated "a misunderstanding by the jury of the law and the evidence."

Appellant also alleges that the trial court erred in allowing in certain hearsay evidence by way of cross-examination, such evidence being in the form of a physician's medical report concerning the appellant which had been supplied to the appellant's attending physician by another physician. The latter physician was not called as a witness at the trial of this matter.

The facts giving rise to this appeal are, in brief, that the appellant was, on the 16th day of August, 1969, driving an automobile on a street in Franklin County when she was struck in the rear of such automobile by the defendant-appellee. The special damages to the automobile were shown to be approximately $1,800.

The appellant, immediately after the collision, went to the St. Anthony Hospital emergency room and was, after observation, released to her own physician. Appellant came under the care of a Dr. Galen Davis, which doctor attended the appellant for about one year, prior to the appellants' moving from this state to Miami, Florida, where she came under the care of another doctor.

On behalf of appellant, Dr. Davis testified that the appellant had suffered a hyperextension flexion injury to the cervical spine, and also a duodenitis condition occasioned by the volume of aspirin which had been prescribed for her.

During the cross-examination of Dr. Davis by defense counsel, the latter questioned the doctor concerning a report prepared by a Dr. Samuel Robinson concerning a physical examination of the appellant. Such examination and report had been requested by Dr. Davis, the latter having referred the appellant to Dr. Robinson, a specialist in

gastroenterology, for a separate opinion concerning her gastrointestinal tract.

Appellant's counsel objected to the introduction of such medical report, arguing that it was hearsay in that the doctor preparing such report was not available for cross-examination, and that such medical report was not an exception to the hearsay rule, as it was not such a record that would be permitted to be introduced pursuant to R. C. 2317.40 (pertaining to certain business records).

Also, the appellant's counsel argued to the trial court, as well as herein, that, in any event, such medical record was not relevant to the issues of the case in that it had been prepared in response to appellant's having been directed to Dr. Robinson by Dr. Davis for a medical analysis of the colitis condition of the plaintiff, which, the appellant's counsel argues, is a physical problem completely separate from, and not claimed as a part of, this case.

The trial court overruled the appellant's objection to the introduction of the report, on the basis that such was a part of the business records of Dr. Davis, and thereupon admitted the complete report as evidence.

We disagree with the decision of the trial court to admit the report for a number of reasons.

The pertinent statute applicable to this discussion is R. C. 2317.40, which reads as follows:

"As used in this section 'business' includes every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not.

"A record of an act, condition, or event, in so far as relevant, is competent evidence if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission.

"This section shall be so interpreted and construed as to effectuate its general purpose to make the law of this

state uniform with those states which enact similar legislation.''

This section of law codified what in essence had been one of the time-honored common law exceptions to the hearsay rule, when dealing with business records. Such was known as the ''shopbook rule.'' The rule had been adopted for the purpose of simplifying the identification and introduction of records with which a number of people had been involved, and to which they had, in part, contributed.

Speaking of the basic theory of the Uniform Business Records as Evidence Act, we find the following, in 30 American Jurisprudence 2d 53, Evidence, Section 933:

'' * * * The basic theory of the uniform law is that records which are properly shown to have been kept as required normally possess a circumstantial probability of trustworthiness, and therefore ought to be received in evidence unless the trial court, after examining them and hearing the manner of their preparation explained, entertains serious doubt as to whether they are dependable or worthy of confidence.''

Insofar as a reviewing court is concerned, the first proposition of law that needs to be stated in relation to R. C. 2317.40 is that, generally, in the application of such section, as it relates to any business records, wide latitude must be given to the trial court in the exercise of its discretion in determining the admissibility of such records. *Halle Bros. Co.* v. *Cope* (1960), 13 Ohio Op. 2d 331, 165 N. E. 2d 25.

There must, however, be certain legal principles regarded and respected in the application of the statute. We note a number of such principles which are particularly pertinent to this matter under review.

In *Weis* v. *Weis* (1947), 147 Ohio St. 416, the Supreme Court, in holding that, generally, hospital records, and physicians' office records may be admissible pursuant to R. C. 2317.40, commented at page 424 as follows:

''Under this and similar statutes, by the great weight of authority, those portions of hospital records made in the regular course of business and pertaining to the busi-

ness of hospitalization and recording observable acts, transactions, occurrences or events incident to the treatment of a patient are admissible, in the absence of privilege, as evidence of the facts therein recorded, insofar as such records are helpful to an understanding of the medical or surgical aspects of the case, and insofar as relevant to the issues involved, provided such records have been prepared, identified and authenticated in the manner specified in the statute itself. * * *''

What was considered to be competent for admissibility as evidence, within such business records section, was set forth in *Weis* at page 425, as follows:

''Such a hospital or physician's office record may properly include case history, diagnosis by one qualified to make it, condition and treatment of the patient covering such items as temperature, pulse, respiration, symptoms, food and medicines given, analysis of the tissues or fluids of the body and the behavior of and complaints made by the patient. * * *'' As to a comment on what may be included within hospital or physicians' reports for introduction under business records acts, see 40 American Jurisprudence 2d 884, Hospitals and Asylums, Section 43.

It should be noted that among the types of contents of hospital records and physicians' office records, which were referred to in *Weis,* as well as within the stated American Jurisprudence article, as being admissible, if otherwise found to be competent, were physicians' physical examinations and findings and a ''diagnosis by one qualified to make it.''

This appellate court has previously given its attention to the admissibility of that portion of a hospital record which contained a medical diagnosis. In the case of *Dillow* v. *Young* (1965), 3 Ohio App. 2d 110, reversed upon other grounds in 6 Ohio St. 2d 221, this court held within the second paragraph of the syllabus, as follows:

''2. Any statement contained in an otherwise duly authenticated record is admissible if that statement falls within the general principles of the law of evidence, and accordingly where a statement would be admissible if tes-

tified to in open court by the person who made the record, a proper record of such statement is admissible.''

As to the inclusion of expert opinion generally, within a business record, the court opined, at page 113, as follows:

"Likewise we think it clear that a record of an opinion by a qualified expert as to a matter upon which opinion evidence is proper is also admissible. * * *''

Accordingly, in the *Dillow* case, this court concluded that a properly authenticated record of a medical diagnosis, made by a qualified physician, may be admitted into evidence under R. C. 2317.40.

We hereby reaffirm the general principle of law as enunciated in *Dillow* v. *Young, supra,* that a medical diagnosis, made by a qualified physician and contained in an otherwise duly authenticated record, is admissible if that statement falls within the general principle of the law of evidence, where such a diagnosis would be admissible if testified to in open court by the person who made the record.

In embracing this rule, however, we feel it is quite necessary to include a few fundamental principles. It is oversimplistic to state that a diagnostic finding can, or cannot be admissible as part of the business records of a hospital, or of a physician.

In the first instance, we feel that the overriding consideration is that such diagnosis must be contained either in the records of a hospital, in which records the diagnosis is a systematic entry made in the regular course of the business of the hospital, or the diagnosis must have been entered within the records of the physician making such diagnosis and the diagnosis must be shown to have been entered, and the record kept, within the regular course of the business of the physician.

Additionally, as stated in *Weis,* any such diagnosis, in order to qualify within the admission into evidence of the hospital record. or physicians' office record, must have been performed by a person qualified to do so. We believe such principle was followed in *Lewis* v. *Woodland* (1955), 101 Ohio App. 442.

We believe that it need be emphasized that one of the

significant points of caution, noted in *Weis*, as to the admissibility of such records, or contents thereof, is that, although such records, properly authenticated, may be admissible into evidence, any statements contained therein, disassociated from and not observed as a fact, transaction, occurrence, or event incident to the treatment of the patient, and helpful to the understanding of the medical or surgical aspects of the matter, are not admissible. *Green* v. *Cleveland* (1948), 150 Ohio St. 441, citing and following *Weis*.

In *Green*, the Supreme Court held a hospital record to be inadmissible in that such record contained a statement by a hospital attendant as to the cause of the injury. Such entry was to the effect that the plaintiff had caught her heel and fell off of a streetcar. Also, similarly, in *Dorsten* v. *Lawrence* (1969), 20 Ohio App. 2d 297, a hospital record was held not to be admissible under the business records act, where such record contained the entry "* * * hit by a truck that was passing the bus properly on the right."

Further, the purpose of the business-records-as-evidence statute is not intended to make relevant or competent that which is not responsive to the issue made, or to make competent that which theretofore had been held to be incompetent for various reasons. *Zeigler Milling Co.* v. *Denman* (1946), 79 Ohio App. 250; *Better Homes Equipment Co.* v. *Nixon* (1955), 72 Ohio Law Abs. 329.

Another important point in the application, and use of such statute, in permitting the introduction and admission of hospital records and physicians' office records into evidence, is that it should not be construed in a manner that would make such records admissible when the oral testimony concerning the same facts would be inadmissible as hearsay. *Schmitt* v. *Doehler Die Casting Co.* (1944), 143 Ohio St. 421; *Weis* v. *Weis, supra.*

The latter point, stated differently, is that "hearsay on hearsay," in the absence of other exceptions to the general hearsay rule, is not admissible, even in view of the business records as evidence statute. *Green* v. *Cleveland, supra; Estes* v. *Goodyear Tire & Rubber Co.* (1950), 60 Ohio Law Abs. 266.

The necessity of the competency, and the relevancy of the evidence admitted pursuant to the statutory exception to the hearsay rule remains an important consideration. In regard to such principle, see 30 American Jurisprudence 2d 54, Evidence, Section 933.

Yet another facet of this case is whether the evidence contained within a hospital record, or a physician's office record relating to a physician's opinion as to whether a patient is malingering or feigning injury or pain is admissible.

We find in an annotation on such subject, to be found in 55 A. L. R. 2d 1031, the following statement:

"Generally speaking, a professional or expert medical witness may be permitted to express his opinion as to whether pain complained of by a patient is real or feigned, or whether he is a malingerer or not."

Also, generally supportive of the principle of the admissibility of expert opinion concerning whether pain or symptoms of disease or injury are real, imaginary, or feigned, or with regard to the severity of the pain, see annotations in 28 A. L. R. 362 and 97 A. L. R. 1284.

We agree with this principle of law, but only in those circumstances where the trial court, in its discretion, has found the statement to be based upon a professional conclusion arrived at after a proper examination of the observable facts, by one qualified to make such an examination and render such an opinion, and where the statement or opinion is relevant to the issue being tried.

Now, applying the general principles of law to the instant case, the facts show that an examining physician, who was not a witness, and not under oath when making his report, and who was not subject to cross-examination, had submitted a report of an examination and "diagnostic findings" he made to another doctor. Such report, in the form of a letter from the examining doctor to the personal physician of the plaintiff, contained the doctor's opinions as to the physical condition of the appellant, objectively as well as subjectively. In addition, such report contains the examining doctor's opinions as to the psychological condition of the plaintiff.

In the first instance, we must conclude that under these circumstances such a diagnostic report is not a business record of the receiving doctor within the purview of R. C. 2317.40. We hold that such a record, in order to constitute a business record and be admissible to prove the truth of the matter asserted, must be that of the physician making the diagnosis and be shown to have been made in the regular course of the business of such doctor. Further, proof must be offered by the proponent and scrutinized by the trial court as to the mode of preparation of such report in order that it may properly be authenticated.

In the instant case, the letter containing the diagnostic findings was not made in the regular course of business of Dr. Davis. Such report may have been made in the regular course of business of Dr. Robinson; however, there was neither authenticating testimony to that fact, nor to the mode of preparation of such report Therefore, Dr. Robinson's letter could not have qualified as a business record pursuant to R. C. 2317.40.

However, even had such report been otherwise qualified, any such evidence to be admissible pursuant to this section must be a record of an observable condition of the patient, *Weis* v. *Weis, supra.* Although portions of such letter may be considered as a report of observable facts concerning the plaintiff, and therefore based upon objective data, there are also statements of Dr. Robinson contained in the letter that would not qualify on any of the criteria required.

Among such statements we believe to be objectionable is the following:

"I had a long talk with Adesta Hytha which was almost necessary just to get some of the tangled details of her life medical and surgical story straight. It also gave her a good opportunity to review some of the painful aspects of her life of what appears to be gross adult maladjustment. * * *""

Additionally, we find the following statement in the last sentence of such letter:

"I still have some difficulty understanding the propriety of this woman fainting [sic] her way through life."

It is necessary to point out that even in an instance where there has been a proper qualification of a hospital record, or a physician's office record, and where such record is found to be generally relevant to the issues, such qualification does not necessarily render all parts of such record admissible. In this regard, see 40 American Jurisprudence 2d 884, Hospitals and Asylums, Section 43.

It is readily ascertainable that such statements go well beyond the reasonable relevancy to the matters at issue in this case. Such statements would, in our view, not be admissible even if Dr. Robinson had been testifying as a witness. The statements, or opinions, were not shown to be specifically related to observations as made by the doctor during such examination.

Although, as previously stated, a medical expert may testify as to his opinion whether a patient is malingering or feigning pain or injury, he would be transcending the proper evidentiary bounds to state that she was "feigning her way through life"

Further in this instance, the letter contained opinions which were psychological or psychiatric by nature and, as such, would require a proper foundation to be laid. There was no showing of this doctor's special professional expertise which would have qualified him to render such opinions.

As pointed out previously, the business records exception to the hearsay rule, found in R. C. 2317.40, does not render admissible that which would otherwise be inadmissible. Evidence which would otherwise be irrelevant to the issues is not rendered relevant by way of such section of law.

Here we find that the statements were allowed without a proper foundation being laid therefor. Further, we find such statements to be objectionable as not being relevant to the issues, and find that the admission of such statements into evidence was prejudicial to appellant.

Therefore, for all of the foregoing, the diagnostic re-

port herein does not qualify as a business record, pursuant to R. C. 2317.40.

However, the defendant-appellee argues that such physician's records, as objected to by the appellant, were admitted into evidence by virtue of their being disclosed during the course of cross-examination, and that the latitude as generally permitted for such cross-examination would *ipso facto* permit the admission of such records.

Not so. That which is inadmissible because of one evidentiary principle or another, inclusive of the hearsay evidence rule, is rendered no more the salutary by virtue of such evidence being elicited upon cross-examination.

As stated within the first paragraph of the syllabus of *Weaver* v. *Ohio* (1929), 120 Ohio St. 97:

"Hearsay evidence that would be incompetent if offered by the state in chief is not rendered competent by the fact that it is elicited by the state from the witness of the accused upon cross-examination."

Further, as stated in 56 Ohio Jurisprudence 2d, 762, Witnesses, Section 328:

"Hearsay evidence cannot be elicited by questions asked upon cross-examination; nor may cross-examination be so conducted as to elicit opinions by a witness not competent as an expert * * *." Citing *Schneiderman* v. *Sesanstein* (1929), 121 Ohio St. 80, and *Cottom* v. *Klein* (1931), 123 Ohio St. 440.

Therefore, we hold that in the instant case the physician's report admitted into evidence was not rendered admissible by virtue of being brought in on cross-examination.

For all of the above reasons, we hold that the trial court erred in admitting the letter of Dr. Robinson into evidence, and hold that such error was, as will be shown in the discussion of the next assignment of error, prejudicial to the plaintiff. This assignment of error is sustained.

It would appear from the record that the jury did in fact lose its way in the process of establishing the damages herein. There was no question of liability presented in this matter, the trial court having directed a verdict for the plaintiff on the issue of negligence.

The jury had presented to it evidence of the expenditure by Mr. Hytha of funds in the amount of $5,126.82 for medical service asserted to be connected with the alleged injuries sustained in this accident. The evidence showed that such amount, less $100 deductible, was reimbursed to Mr. Hytha by his insurance company. In addition, Mr. Hytha showed that he had an expense for car rental in the amount of $805. The jury awarded Mr. Hytha $905.

Further, the jury awarded Mrs. Hytha $245.75 which would appear to be based upon the hospital emergency room charges, and the charges of Dr. Davis, which award would seem to recognize at least some injuries having been received by the plaintiff in this accident.

Although such award recognizes the damage occasioned to the Hytha's automobile and recognizes some injury sustained by Mrs. Hytha, certainly no additional amounts could reasonably have been included by way of any pain and suffering sustained by Mrs. Hytha.

The award, we believe, could be attributed to the weight placed by the jury upon the evidence of Dr. Robinson, which evidence undoubtedly influenced the jury in making such award.

This assignment of error is, therefore, well taken.

Based upon all of the foregoing, the judgment of the Court of Common Pleas of Franklin County is therefore reversed, and this matter is remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

STRAUSBAUGH and WHITESIDE, JJ., concur.

WHITESIDE, J., concurring. Although I concur with the decision, there is one important additional consideration. We are dealing here with "diagnostic findings" of one doctor reported to and found among the records of another doctor. Under such circumstances, the report is not a business record of the receiving doctor within the purview of R. C. 2317.40. To constitute a business record, R. C. 2317.-

40 requires that it be "*made* in the regular course of business." As to the instant report, it was *received* but not made in the regular course of the business of Dr. Davis. If it was made in the regular course of business, it was the regular course of Dr. Robinson's business in which the report was made. Thus, the report could possibly constitute a business record of Dr. Robinson, but it was not a business record of Dr. Davis. See the second paragraph of the syllabus of *Green* v. *Cleveland* (1948), 150 Ohio St. 441.

Obviously, every business receives numerous communications from others which it places and maintains in its files. However, such communications are not *ipso facto* admissible to prove the truth of that asserted therein under the business records exception to the hearsay rule. The obvious difficulty is that the recipient of a report or communication is ordinarily in no position to testify from first-hand knowledge as to the mode of preparation of the report or communication which is one of the preliminary requirements of R. C. 2317.40.

A report of a doctor is not properly authenticated when the evidence is merely that it was received by another doctor in the regular course of the receiving doctor's business and placed in his files. Such a report is not a record made in the ordinary course of the business of the recipient doctor.